[No. 8370. Department One. January 28, 1910.]

WILL H. MERRITT et al., Appellants v. EFFIE LILLYBLADE et al., Respondents.[1]

LANDLORD AND TENANT—LEASE—ASSIGNMENT. A contract to transfer a lease by a good title is provisional where the assignee knows that the lease contains a clause prohibiting assignment without consent of the landlord.

BROKERS—COMMISSIONS—FAILURE OF TITLE—TRANSFER OF LEASE. A broker is not entitled to a commission for effecting a sale of a leasehold where the contract of sale was provisional, being dependent upon securing the landlord's consent to the assignment of the lease or the execution of a new lease on terms refused by the landlord, and the contract of sale required a good title.

Appeal from a judgment of the superior court for King county, Tallman, J., entered February 9, 1909, upon granting a nonsuit at the close of plaintiff's case, dismissing an action for a broker's commission. Affirmed.

[1]Reported in 106 Pac. 621.

*James B. Kinne* and *Blaine, Tucker & Hyland*, for appellants.

*Jay C. Allen*, for respondents.

Gose, J.—The plaintiffs, a copartnership, commenced this action to recover a broker's commission. At the close of their case a nonsuit was granted on the motion of the defendants, and a cost judgment entered in their behalf. The plaintiffs have appealed.

The complaint charges that the respondents were the owners of the furniture in the Shirley hotel in the city of Seattle, and had a leasehold interest in the hotel; that they were desirous of selling the furniture, their good will in the business, and their leasehold interest, and that they employed the appellants to procure a purchaser; that the appellants procured a purchaser, ready, able, and willing to buy the property upon terms approved by the respondents, and that the respondents, having entered into a written contract of sale with the purchaser, refused to perform the contract. The written contract which it is asserted the respondents breached is as follows:

"Seattle, Wash., March 28, 1908.

"Received of John Quinn the sum of Five Hundred Dollars ($500) to apply on the contract for the purchase of all the furnishings and furniture of every kind, name and nature located in and about the Shirley Hotel, located at 1516, 5th Avenue, in the City of Seattle, King county, Washington. The full purchase price of said property is $18,000, payable as follows: $8,000 cash in hand, including the amount of this receipt, and $4,000, which stands as a furniture lien or contract in favor of the Standard Furniture Company, and $6,000 to be paid in two equal payments of $3,000 each on or before one and two years from the date of closing this deal, with interest thereon at the rate of seven per cent per annum, interest payable semi-annually. The said purchaser is to be furnished a good, complete and sufficient title to the said property, and also a lease on said property, ending three years from about the 1st day of June, 1908, at a monthly rental of $650 per month. Said lease to include the heat and

hot and cold water used in said hotel. That the said John Quinn shall be allowed ten days for the examination of the title to said property; whereupon he agrees to complete the purchase in the manner and upon the terms therein; and upon his failure so to do the said sum of money hereby receipted for shall at the option of the Merritt Realty Co. be forfeited as liquidated damages. It being understood that onehalf of the said deposit shall be retained by the Merritt Realty Co. and the other half to go to the vendor herein, as forfeited or liquidated damages.

"It is further understood and agreed that in the event that title cannot be made good by vendor herein, or that the lease cannot be transferred as hereinabove stated within 20 days of the date hereof, that the said sum of money hereby receipted for shall be refunded.

"Merritt Realty Co. By Will H. Merritt, Agent.

"Subject to the owner's approval, I hereby agree to the above provisions.            John Quinn, Purchaser.

"The above provisions and agreements are hereby accepted.
            "Effie Lillyblade, Owner."

The uncontroverted facts are, that the respondents had a lease upon the hotel, beginning about April 1, 1906, and expiring April 1, 1911, at a monthly rental of $610, subject to the express condition that the lessees "will not assign this lease or any interest therein without the written consent of the parties of the first part," the owners; that the appellants knew of the nonassignment clause in the lease before they procured the written contract; that they knew that the owner of the hotel would not consent to the assignment of the lease, and that a new lease would be required. The appellant who negotiated the sale prepared the contract and testified that he was to sell the furniture and the lease. We think the contract of sale was a provisional one. It recites that "the said purchaser is to be furnished a good, complete, and sufficient title to said property, and also a lease on said property ending three years from about the 1st day of June, 1908, at a monthly rental of $650 per month, said lease to

11—57 wash.

include the heat and hot and cold water used in said hotel."
The concluding clause provides:

"It is further understood and agreed that in the event
the title cannot be made good by the vendor herein or that the
lease cannot be transferred as hereinbefore stated within
twenty days of the date hereof, that the said ·sum of money
hereby receipted for shall be refunded."

The sale failed of consummation because the owner would
not permit the assignment of the lease and would not execute
a lease requiring him to furnish the water at a monthly rental
of $650. In the respondents' lease the landlord furnished
the steam to heat both the building and the water, but did
not furnish the water. He was willing to assume a like ob-
ligation in the new lease. The contract read as an en-
tirety, although somewhat obscure, contemplates that, if
the landlord will not make a lease of the hotel at $650 per
month with hot and cold water furnished, the money ad-
vanced on the contract shall be returned to the purchaser and
the contract extinguished. It seems clear, therefore, that
the sale was a conditional or provisional one, and that it was
not the intention of the parties to require of the respondents
more than a readiness on their part to convey a good title
to the furniture and transfer the lease. The right of the
appellants to recover a commission rests in parol. The record
discloses that they were to have a commission for selling the
furniture and the respondents' leasehold interest. This they
did not do. As was said in *Condict v. Cowdrey,* 139 N. Y.
273, 34 N. E. 781:

"By the contract between the plaintiff and defendant he
was not entitled to commissions, unless there was an actual
sale of the property effected through his agency. It must
appear to have been a binding and enforcible agreement for
the sale . . . and it is not sufficient to show a provisional
arrangement which has failed because of the nonfulfillment of
a condition not dependent upon the action of the vendor."

It is evident that the leasehold could not be transferred or
a new lease obtained without the consent of the owner of the

property, and that his consent could not be obtained.   The sale, therefore, was dependent upon this condition, and its nonfulfillment creates no liability against the respondents. Moreover, if we treat the contract as ambiguous in this respect, the appellant's testimony, as we have seen, leads to the same end.   The record does not present a case where the broker made an actual unconditional sale which was defeated on account of a defective title in the vendor, but rather, as we have seen, a provisional one depending upon the assent of a third party.

The judgment will be affirmed.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.