fixed it at about 87 per cent. Defendant had no notice of such danger of depreciation, and this alone is fatal error. Wolfe v. Weir, 61 Misc. Rep. 57, 112 N. Y. Supp. 1078.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event, unless the plaintiffs stipulate to reduce the judgment to the sum of $10 and costs in the court below, in which event the judgment, as so modified, is affirmed, without costs to either party on this appeal.

<hr>

(66 Misc. Rep. 144.)

## RANGER v. LEO.

(Supreme Court, Appellate Term. February 24, 1910.)

1. BROKERS (§ 61*)—EMPLOYMENT—DUTY TO GIVE NOTICE OF RESTRICTIVE COVE-
NANTS.

   Where an owner of real estate, situated in a district within which a large part of the land is subject to ancient covenants, employs a broker to procure a purchaser, he need not inform the broker of the existence of the restrictive covenants in his chain of title, unless the broker asks about it, and the silence of the owner is not equivalent to a fraudulent conceal-ment of covenants.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92, 93; Dec. Dig. § 61.*]

2. COVENANTS (§ 51*)—RESTRICTIVE COVENANTS—CONSTRUCTION.

   An ancient covenant prohibiting the erection of any slaughterhouse, coal yard or cow pen, tenement house, tallow chandlery, etc., does not pre-vent the building of an apartment house.

   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. § 51.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by George Ranger against John P. Leo. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

See, also, 117 N. Y. Supp. 927.

Argued before SEABURY, GUY, and WHITNEY, JJ.

Dulon & Roe (Edward S. Clinch, of counsel), for appellant.
Moss & Feiner (Samuel M. Fischer, of counsel), for respondent.

WHITNEY, J. Plaintiff is a real estate broker. On Tuesday, December 1, 1908, he obtained authority to negotiate for the sale of a piece of real property. After active negotiations he obtained on Thursday an oral agreement for a sale to two brothers named Kemp-ner. The terms were $52,250, "all cash over the mortgage." Except this reference to a mortgage, nothing was said by anybody, in plain-tiff's conversation either with the seller or the buyer, as to whether there were any incumbrances upon the land. Late Thursday after-noon plaintiff called on defendant's attorney for the purpose of hav-ing the contract drawn up. Plaintiff testifies that he was then in-formed by the attorney that there were restrictions against nuisances, but that there were no restrictions against tenement houses. The lat-

ter statement is contradicted. On Friday morning the parties met plaintiff at the attorney's office, the Kempners bringing their attorney also. There was no apparent obstacle to the signing of the contract, except that the Kempners' attorney questioned the title on account of the existence of the covenant against tenement houses, and said that he would not advise his clients to make the contract, unless the vice president of the Lawyers' Title Insurance Company would give assurance that he would insure the title for the purposes of the buyers, who wished to build a high-class apartment house thereon. All hands then went to the company's office, where the vice president said that he would give an answer by Monday morning. There is dispute as to whether the defendant then agreed to hold the matter open until Monday; but he actually did hold it open until Monday noon, although he was receiving other offers for the same property. On Saturday defendant's attorney demanded a decision by that afternoon as to whether they would take the property. One of them expressed willingness to do so, but the other was off playing golf and could not be reached. Their attorney insisted that the matter must stand over until Monday, although he said that they might take title even if the company would not insure it. There were further communications by telephone to the effect that the Kempners insisted that the matter be held over until Monday noon, and this was acquiesced in. Nothing further was heard from them up to that hour. An hour or two later defendant signed a contract to sell the property to other parties. In the evening, although they had not heard from the title company, plaintiff telephoned that the Kempners would sign the contract, but it was then already too late.

Plaintiff's theory is that he produced a buyer ready and able to take the property, and that the deal fell through on account of the existence of incumbrances of which defendant should have informed him beforehand. On the first trial the complaint was dismissed; but the judgment was reversed by this court upon plaintiff's appeal, and a new trial ordered. On the second trial plaintiff was successful. The opinion in the former appeal shows a different state of facts from that appearing in this record. Defendant did not lure plaintiff to search for buyers, but permitted him to do so at his own request. Defendant concealed nothing. Plaintiff admits that he did not inquire about the existence of incumbrances. Defendant did not sell the property pending an adjournment, but waited until what the buyer claimed to be the adjourned hour, although he did not admit any obligation to do so.

There were two fatal obstacles to plaintiff's success in this action.

In the first place, there is no duty on the part of a real estate owner to inform a broker as to whether there are covenants as to nuisances in his chain of title, unless he is asked about it. It is the duty of the broker to ask, if he wants to know. A large part of the land in the borough of Manhattan is subject to such covenants in some form, covenants of ancient standing, of whose existence the owner is often unaware. It does not occur to the owner, unless he is an experienced trader, to inquire as to the existence of such covenants, or to mention them if he knows about them. The employment of a broker is nearly

always, as in this instance, at the broker's own suggestion. The broker is an expert in such matters, familiar with these covenants and their frequency. The covenants are not usually of any present importance. They are generally rather a benefit than an injury to the property. To hold that silence about them on the owner's part is equivalent to fraudulent concealment of them from the broker would be to establish a rule without sufficient reason, and would probably result in fraud and imposition. These views seem to be supported by Weibler v. Cook, 77 App. Div. 637, 78 N. Y. Supp. 1029, which was also a broker's action to recover commissions, and where the court pointed out, as an important fact in reversing the judgment for the plaintiff, "that there was no statement to the plaintiff that the property was free from incumbrances and restrictions."

In the second place, the Kempners acted unreasonably in delaying the contract on account of this covenant; for it was no obstacle to the building of such an apartment house as they contemplated. The covenant which they objected to prohibited the erection of "any slaughter house, coal yard or cow pen, tenement house, tallow chandlery," etc., and was closely similar to one which some years earlier had been before the courts in Kitching v. Brown, 180 N. Y. 414, 73 N. E. 241, 70 L. R. A. 742, and had been held not applicable to apartment houses.

Judgment should therefore be reversed. As the testimony is in accord upon every relevant question of fact, judgment should be entered in favor of the defendant without further litigation.

Judgment reversed, with costs, and complaint dismissed. All concur.