VAN VLIET & PLACE, INC., Respondent, *v.* THOMAS J. GAINES, as Executor, etc., of MARTHA A. GAINES, Deceased, Appellant.

*First Department, November 4, 1927.*

**Brokers — real estate brokers — action for commissions — prospective purchaser refused to sign contract because of ninety-year old covenant against use which was unknown to owner — it was duty of broker to ask about covenants — owner not guilty of fraud — minds of parties never met — plaintiff cannot recover.**

The plaintiff, a licensed real estate broker, asked the defendant's testatrix, the owner of the real property in question, for the sale price and the terms of sale and stated that it had a prospective purchaser. The president of the plaintiff dictated a letter which was signed by the owner of the property, in which the terms of sale were stated, and which also stated that there was no mortgage against the property. The prospective purchaser refused to complete the purchase and sign a contract on the ground that there existed a ninety-year old covenant against the use of the property for certain purposes, which covenant was not mentioned in the letter relating to the terms of sale and which was unknown to the owner of the property.

It was the duty of the broker to ask the owner about restrictive covenants and to inform itself whether or not any covenants existed against the property. Since it was not the duty of the owner to tell the broker of all existing covenants, and since the existence of the particular covenant was unknown to the owner, and there was no fraud, the plaintiff cannot recover commissions, for the minds of the prospective purchaser and the owner of the property never met in a contract of sale.

APPEAL by the defendant, Thomas J. Gaines, as executor, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of March, 1926, upon the verdict of a jury rendered by direction of the court.

This action was commenced against Martha A. Gaines. Since the trial of the action and the taking of the appeal from said judgment, the defendant Martha A. Gaines has died, and her personal representative has been substituted as a party defendant.

*John J. Crawford* of counsel [*Brush & Crawford,* attorneys], for the appellant.

*Theodore E. Larson* of counsel [*Randall, Larson & Hawkins,* attorneys], for the respondent.

MERRELL, J. The plaintiff is a domestic corporation licensed as a real estate broker, pursuant to the laws of the State of New York. On April 27, 1923, the decedent, Martha A. Gaines, was the owner of a parcel of real property, consisting of an apartment house, situate at the corner of Jane street and Eighth avenue in the borough of Manhattan, New York city. On that day the plaintiff addressed to the Estate of Abigail A. Huyler, in the care of Mr. Thomas J. Gaines, a letter, being under the impression that said estate was the owner of the real property in question, asking whether the owner would be interested in disposing of said real property, and stating that the plaintiff was not writing the letter to list the property, but had an actual buyer therefor. On the day following T. J. Gaines, in whose care the plaintiff had addressed said letter, wrote the plaintiff in reply thereto advising the plaintiff that the property in question was in the market for sale, stating the price asked therefor, and that terms would be arranged to a satisfactory purchaser. Three days later the plaintiff replied to the letter of said Gaines thanking him therefor and asking further particulars as to leases of the stores and apartments in the building on the property and the rents received therefor, the plaintiff stating in its letter that it would like the particulars so that it could offer the property to its party. On the day following, May 2, 1923, Gaines replied to the plaintiff's letter of May first, advising plaintiff as to the aggregate yearly rentals received by the owner of the property. On May 11, 1923, plaintiff's president called upon Mr. Gaines at the latter's office and made further inquiry as to the property, as to whether it was mortgaged, and as to whether the owner would take back a mortgage for part of the purchase price. At this conversation Gaines advised plaintiff's president that his mother was the owner of the property, and that she was an invalid and he would answer for her, as she could not be seen. Plaintiff's president then told Gaines, as his mother was the owner of the property, it would be fair to have her sign a letter stating the lowest price she would take for the property and the terms upon which she would dispose of the same, and thereupon plaintiff's president wrote a letter addressed to his corporation, which he requested be signed by the owner of the property. The letter thus prepared by plaintiff's president was typewritten and signed by Martha A. Gaines, who then was the owner of the property, and was delivered to plaintiff. The letter was as follows:

" Gaines and Silvey
  " Successors to
" Coe & Silvey
" 80 Maiden Lane,
     " New York, *May* 11*th*, 1923.
" Insurance
" Messrs. Van Vliet & Place,
   16–8th Avenue,
    " New York City.

" Gentlemen.— This is to advise you that as owner of the premises, Nos. 35–37 Jane Street, and Nos. 31–43 8th Avenue, New York City, I will sell said premises for $94,500.00. The premises are free of any mortgage, and I will take back a purchase mortgage of $75,000 to run for three or five years at $5\frac{1}{2}\%$ per annum, if said $5\frac{1}{2}\%$ is now the prevailing rate, with the privilege of paying off the entire mortgage upon written notice of 60 days. I would want from $2500 to $3000 on the contract, and the balance on the closing of the title. If you have a buyer at this price, I will give you until 12 o'clock noon of the 18th inst.

" This is my ultimatum and nothing lower than this price can be obtained. If I do not hear from you by the above-named date, I will consider the matter entirely off.

     " Yours very truly,
      " M. A. GAINES."

On May 14, 1923, plaintiff wrote Mrs. Gaines as follows:

" Van Vliet & Place,
" Successors to E. L. and B. T. Burnham
" Real Estate and Insurance
" 16 Eighth Avenue or 23 Abingdon Square
  " George Place, President
  " Jacob J. Luger, Jr., Sec'y and Treas.
     " New York, *May* 14, 1923.
" Mrs. M. N. Gaines,
  " 19 West 55th Street,
   " New York City:

" Dear Lady.— This is to advise you that the option for the purchase of your property 31–43 Eighth Avenue and 35–7 Jane Street, being the northwest corner of 8th Avenue and Jane Street, has been accepted on the price and terms named in said option, and the prospective buyer is ready to sign a contract when you have same in readiness which ordinarily should be by tomorrow.

" Kindly advise us at your earliest convenience.
     " Yours sincerely,
      " VAN VLIET & PLACE,
       " Geo. Place, *Pres.*"

Shortly after the transmission of this letter of acceptance of the owner's terms the parties met for the purpose of entering into a formal contract for the sale of the property, and it was then discovered that the premises in question were held subject to the following provision contained in a deed conveying real property of which the parcel in question was a part, dated December 17, 1834, to wit: " Upon the condition nevertheless that if said party of the second part, his heirs or assigns, shall and do at any time hereafter erect or permit upon said premises hereby conveyed, or any part thereof, any cemetery or place for the burial of dead bodies, any slaughter house, any manufactory of gun powder, glue, varnish, vitriol or turpentine or for the tanning, dressing or preparing of skins or leather, blacksmith shop, forge or furnace, or any other business or occupation usually deemed unwholesome, noxious or offensive, then said premises and every part thereof shall revert to said party of the first part and their heirs, and these presents and every grant hereinbefore or hereinafter contained shall henceforth be absolutely null and void or anything hereinbefore or hereinafter contained to the contrary thereof notwithstanding."

Mrs. Gaines, the owner of the property, had no actual knowledge that the property was affected by any restrictions upon its use or by any covenants against nuisance prior to the day when the parties thus met to enter into a formal contract of sale. At no time was any inquiry made of the owner of the property as to the existence of any condition or restriction upon its use, and it was stipulated at the trial that no terms or conditions of sale were stated by or on behalf of the owner, except those contained in the letter of May 11, 1923, which had been prepared by the president of the plaintiff. The only representation contained in this letter with reference to incumbrances was that " the premises are free of any mortgage." By reason of the aforesaid covenant and restriction the proposed purchaser of the property refused to take title thereto unless the owner would give assurances of its marketability. The owner refused to enter into the usual contract for a warranty deed to sell the premises to plaintiff's prospective purchaser, unless such sale was subject to the aforesaid restrictive covenant. As a result no contract of sale was entered into between the parties. The plaintiff claimed to be entitled to its commissions for procuring a purchaser ready, able and willing to take title to the property at the price and on the terms offered by the owner, and brought the present action to recover the same. Upon proof of the facts above stated the court at Trial Term directed the jury to return a verdict in plaintiff's favor and against the defendant for

the amount of the commissions claimed, and the judgment appealed from was entered upon the verdict rendered by such direction.

I think, under the facts in this case, the court erred in directing a verdict in plaintiff's favor. While it was stipulated at the trial that the defendant authorized the plaintiff to obtain a purchaser for the premises in question, the minds of the owner and the would-be purchaser never met, and no contract was ever entered into between them. The plaintiff broker applied to the owner of the property for terms upon which the latter would sell. These terms were furnished by the owner. No inquiry whatever was made by the broker as to whether the property was subject to any restrictions or covenants against use. The president of the plaintiff himself prepared the written instrument containing all of the terms and conditions of the sale of the property by the defendant. No other terms or conditions of sale were stated by the owner, except those contained in the letter of May 11, 1923, addressed by the defendant to the plaintiff and which had been prepared by plaintiff's president. The only theory under which the plaintiff could recover its commissions is that the owner in offering the property made some misrepresentation with relation to the title thereto or withheld facts which should have been divulged to the broker. It is undisputed that at the time of the negotiations for the sale the owner was in entire ignorance of the existence of any restriction or covenant against use of the property, and was entirely ignorant that in a deed of real property embracing the premises in question over ninety years before there was a covenant against use. Had the broker made inquiry of the owner as to whether there were existing restrictions as to the use of the property, it would then have been her duty to have ascertained whether such restriction existed and to have informed the broker thereof. Under the circumstances the owner was guilty of no fraud, misrepresentation or concealment. Unless she was asked, the owner was under no duty to advise the broker with reference to covenants against use in her chain of title. It was the broker's duty to ask, if he wished to know. It is a matter of common knowledge that much of the land in the city of New York is held subject to ancient covenants similar to those contained in the mesne conveyance through which Mrs. Gaines received her title. Usually the owner is unaware of their existence, and only becomes advised thereof by a critical search of the public records in the registrar's office. The same question was presented in the case of *Ranger* v. *Lee* (66 Misc. 144) where, under similar facts, Mr. Justice WHITNEY, writing for the Appellate Term in this Department, said (at p. 146): "There is no duty on the part of a real estate owner to inform a broker as to whether

there are covenants as to nuisances in his chain of title, unless he is asked about it. It is the duty of the broker to ask, if he wants to know. A large part of the land in the borough of Manhattan is subject to such covenants in some form, covenants of ancient standing, of whose existence the owner is often unaware. It does not occur to the owner, unless he is an experienced trader, to inquire as to the existence of such covenants or to mention them if he knows about them. The employment of a broker is nearly always, as in this instance, at the broker's own suggestion.

" The broker is an expert in such matters, familiar with these covenants and their frequency. The covenants are not usually of any present importance. They are generally rather a benefit than an injury to the property. To hold that silence about them on the owner's part is equivalent to fraudulent concealment of them from the broker would be to establish a rule without sufficient reason, and would probably result in fraud and imposition." While we are not bound by decisions of inferior courts, the above language of the learned justice writing for the Appellate Term is so apt as to bear repetition here.

While it was stipulated at the trial that the owner of the property authorized the plaintiff to obtain a purchaser for the premises in question, it clearly appears that the broker first applied to the owner for terms under which a client, which plaintiff professed to have, might purchase the property, and that any employment of the plaintiff by the owner was at the plaintiff's own suggestion. During forty-three years of experience as a broker plaintiff's president must have been familiar with similar restrictive covenants. It is a matter of serious doubt whether this covenant of over ninety years' existence in fact affected the marketability of the owner's title to the property. The property was benefited rather than injured by such covenant, and it is doubtful whether the property could be put to any of the prescribed uses, even though the covenant in question was not in existence. To entitle the plaintiff to recover in this action it must be held that the failure of the owner to inform the broker of the existence of the covenant was tantamount to a fraudulent concealment on the owner's part. The circumstances of this case do not warrant such a result.

The judgment appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

DOWLING, P. J., MARTIN, O'MALLEY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.