[No. 1487-3.  Division Three.  June 16, 1976.]

H. A. Everest, *Respondent*, v. Rose Ann Levenson, *Appellant*.

*William F. Nielsen* and *Hamblen, Gilbert & Brooke, P.S.,* for appellant.

*Kenneth A. Bell,* for respondent.

Munson, J.—Mrs. Levenson appeals from a judgment holding her individually liable to pay a real estate commission to the H. A. Everest Co., as well as attorneys' fees. She contends she is not required to pay either because: (a) a significant portion of the property she contracted to sell was community property, and neither the listing agreement nor the earnest money agreement was signed by her husband, thus constituting defects known to the respondent; and (b) at the time she signed the listing agreement she was mentally incompetent. We affirm the trial court.

On May 2, 1974, Mrs. Levenson signed a listing agreement with the H. A. Everest Company offering to sell her Spokane apartment building, which was her separate property, and the furnishings of each of the apartments, including those in the apartment occupied by her husband and herself, for $165,000. However, she contends most of the furnishings in the Levenson apartment were either acquired while they were living together and thus are jointly owned, or were acquired subsequent to their marriage in December 1973. Mr. Levenson did not sign the listing agreement which provided that the commission would be paid by Mrs. Levenson upon the company obtaining a "purchaser, ready, able and willing to buy . . ."

On May 7, 1974, two of the Everest sales persons showed the property to a buyer who signed an earnest money agreement offering to purchase the furnished apartment building for the listed price. That same evening Mrs. Levenson signed the earnest money agreement, accepting the offer and again agreeing to pay a 10 percent real estate commission on the $165,000 sale. Mr. Levenson, who was present, did not sign the earnest money agreement. Subsequently, Mrs. Levenson refused to sell; the H. A. Everest Company brought this action to obtain the contracted real estate commission.

Appellant contends she is not required to pay the real estate commission because the personal contents of the Levenson apartment, which formed a significant portion of the contract ($30,000), were community property; the sale of community property requires the written ratification or signature of Mr. Levenson, and he neither signed the agreement nor ratified the sale.

The signing of a listing agreement to sell community property without the express or implied consent of the nonparticipating spouse prevents the creation of a community obligation, RCW 26.16.030(5) and (6);[1] but that omis-

[1]RCW 26.16.030:

"Property not acquired or owned, as prescribed in RCW 26.16.010 and 26.16.020, acquired after marriage by either husband or wife or

sion does not relieve the participating member of the community from individual liability. *Geoghegan v. Dever*, 30 Wn.2d 877, 899, 194 P.2d 397 (1948). Neither Mr. Levenson nor the Levenson community is a party to this action; respondent seeks a judgment against Mrs. Levenson, individually. Since she is the only contracting seller, if the respondent performed its contractual obligation, it is entitled to judgment. *Geoghegan v. Dever, supra; Anderson v. Shain*, 1 Wn. App. 469, 462 P.2d 566 (1969).

Mrs. Levenson next contends that the plaintiff's agent knew of her "legal incapacity" to sell the community personalty; hence, plaintiff is not entitled to a commission. This contention is not supported by the record or the findings of the trial court. *Best v. Kelley*, 22 Wn.2d 257, 155 P.2d 794, 156 A.L.R. 1387 (1945).[2]

■ The general rule is that a real estate broker, who, in good faith, procures a purchaser ready, able, and willing to take the property upon the terms offered by the principal, is entitled to his commission, even though the sale fails because of a defective title, if the broker had no notice of the defect. *Anderson v. Shain, supra.* However, Mrs. Levenson contends respondent's agent knew the Levenson community had made substantial improvements in the property

---

both, is community property. Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property, except:

". . .

"(5) Neither spouse shall . . . sell, community household goods, furnishings, or appliances unless the other spouse joins in executing the security agreement or bill of sale, if any.

"(6) Neither spouse shall . . . sell, . . . the assets, including real estate, or the good will of a business where both spouses participate in its management without the consent of the other: . . ."

[2] On oral argument Mrs. Levenson's counsel argued that respondent did not produce an able buyer, *i.e.*, respondent knew or should have known of the community interest and this somehow affected the buyer being able to purchase. This argument misconstrues the definition of "able." In the context of a listing agreement, an able buyer is one who can perform his or her obligations under the agreement. The seller's ability to perform is not pertinent to that determination. 12 Am. Jur. 2d *Brokers* §§ 183-84, at 923-25 (1964).

and purchased household furnishings for their apartment subsequent to buying this property. She had purchased the apartment house in May of 1973, from the same agent who participated in this transaction; thus, she urges this case falls within the exception to the general rule:

[I]f the broker at the time he makes the contract with the owner knows of the defect in his employer's title or knows facts sufficient to put a reasonably prudent person on inquiry, which if followed with reasonable diligence would bring to him such knowledge, he is not entitled to recover where the sale fails because of such defect, . . ."

*Best v. Kelley, supra* at 267, quoting with approval from *Renick v. Mann,* 194 Ky. 251, 238 S.W. 763 (1922).

Neither the challenged findings of fact nor those proposed by Mrs. Levenson to which error is assigned evidence any contention that the real estate agent knew or should have known (a) that the Levensons had married subsequent to the purchase of the apartment building or (b) the source of any funds utilized in making these improvements and in acquiring the household goods. Whether the realtor knew or should have had sufficient knowledge to put him on inquiry was a question of fact for the court. It made no such finding, nor was such a finding proposed by Mrs. Levenson to that effect. Furthermore, there is no finding or any proposed finding, to which error is assigned, indicating that this sale failed because of any defect in Mrs. Levenson's title. The exception is not applicable.

Next, Mrs. Levenson argues that under RCW 26.16.030(5) the sale of community household goods cannot be effected by one spouse unless the other spouse "joins in executing the security agreement or bill of sale, if any." The trial court found Mr. Levenson, having been present at the time the earnest money agreement was signed, "did signify his approval of the sale and recommended to his wife, Rose Ann, that she sign the earnest money agreement." This ratification is supported by substantial evidence; but Mrs. Levenson contends that it is ineffective unless

it is in writing. The necessary documents to effect the sale would have to be prepared after the earnest money agreement was executed. When Mrs. Levenson refused to sell, there was no necessity for the preparation of a "bill of sale." The statute does not prevent an oral ratification at this stage of the transaction. The same reasoning applies to the inapplicability of RCW 26.16.030 (6); in addition, that subsection does not require a written consent. Furthermore, the court's finding of ratification, which is supported by substantial evidence, effectively eliminated the contention of Mrs. Levenson that she did not have permission to sell any jointly owned property. We agree with the trial court that the parties had entered into a valid contract, enforceable against Mrs. Levenson individually.

Mrs. Levenson's last contention, that she was mentally incompetent at the time she executed the listing agreement because she had a volatile temperament, was emotionally unstable, and at that time, was involved in marital strife, presented a question of fact. The trial court found her to be competent; the record amply supports that finding.

The agreement provides for attorney's fees. Judgment is affirmed and the case remanded to the trial court for determination of reasonable attorney's fees for plaintiff on appeal.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied July 1, 1976.

Review denied by Supreme Court November 12, 1976.