[No. 15478.   Department One.   January 13, 1920.]

D. C. BROWNELL, *as Brownell & Company, Respondent,*
v. E. G. HANSON, *Appellant.*[1]

BROKERS (17)—COMMISSIONS—PERFORMANCE OF CONTRACT—WILLINGNESS TO PERFORM. A broker is not entitled to commissions upon a sale where he had knowledge of defects of the owner's title, and the sale failed of consummation by reason of the defect which he could not remedy; since he failed to obtain a purchaser ready and willing to buy.

SAME (3, 18)—EMPLOYMENT—DURATION—NEGOTIATIONS THROUGH OTHER AGENTS. A broker who was given an exclusive agency to sell property for a period of thirty days and thereafter until revoked by written notice, is entitled to commissions upon a sale made through another agent without notice to him.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 10, 1919, upon findings in favor of the plaintiff, in an action to recover a broker's commission, tried to the court. Affirmed.

*Wardall & Martin (Winter S. Martin,* of counsel), for appellant.

*H. E. Foster,* for respondent.

HOLCOMB, C. J.—Respondent, as successor in business to Templeman & Brownell, sued to recover a brokerage commission.

The complaint alleged the employment, on October 24, 1918, by appellant as sole and exclusive agent to sell an apartment house, the furniture and furnishings and the leasehold interest of the premises known as the Van Siclen Apartments. It was alleged that respondent produced a purchaser ready, able and willing to buy at the agreed price, and that respondent was agreed to have a commission of five per cent of the

[1] Reported in 186 Pac. 873.

sale price of $12,500, or the sum of $625, for which judgment was demanded. Appellant put those allegations in issue by general denial.

Respondent proved, and appellant at the trial admitted, the following written memorandum of agreement:

"Seattle, Wn. 10-24  1918

"For and in consideration of the sum of One Dollar, receipt of which is hereby acknowledged, I hereby appoint Templeman & Brownell of 526-527 Green Building, Seattle, Washington, sole agents for the sale of my apartment house furniture and furnishings and leasehold with leasehold interest, located 1214 8th Ave., Seattle, Wn. and agree to pay them 5% as remuneration for their services if sold for $13,000 or any price that I may accept.

"This contract to continue in force for thirty days and thereafter until sold, unless revoked by a written notice at the expiration of the thirty days.
"Witness: D. C. Brownell.    Owner   Hanson"

The case made by respondent, however, was not as alleged in the complaint, but was substantially as follows:

What appellant had to sell was the apartment house lease and the furniture and furnishings contained in the apartment house, which consisted of a seven-story building of one hundred and fifty-four rooms, or sixty-three apartments. Respondent procured a purchaser named Cronander, on October 24, 1918, who agreed to pay the sum of $12,500 for the apartment house and leasehold, upon terms, $8,000 cash and the balance in monthly payments, which price and terms were acceptable to appellant. The sale, however, was conditional upon the condition that the lease of appellant, which had nearly two years to run from the date of the agreement, with privilege of renewal, be renewed for two years more at least, at the same rent of $775 per month, and also upon the condition that the buyer,

Cronander, could transfer the lease without paying any bonus in case he should wish to sell. There was a further condition that in case the vendor, appellant, was unable to deliver the property with good title within ten days from the date of the agreement, then the money paid down should be returned to the purchaser by the vendor upon demand, but in case the vendor could deliver the property within the time specified with good title, and the purchaser for any reason should fail to complete his part of the deal, then the money paid down should be retained by the vendor as liquidated damages.

The parties were unable to procure the written consent of the owner of the premises, Hutchinson, to the transfer of the lease or to the extension for two years. There was a condition in the lease, which was offered by appellant and rejected by the court, but which we have before us, against transfer of the lease by appellant without the written consent of the landlord, and there was also a provision that the lessees named therein, Hanson and wife, should have an option to extend the lease for a period of two years after its expiration, namely, after June 30, 1920, at a rental then agreed upon. Upon the failure to obtain the consent of Hutchinson, the landlord, to the transfer of the lease and the extension thereof to respondent's purchaser, the money he had paid down, $500, was returned to him and the sale fell through. Thereafter appellant procured another broker, who, through its active agent, Antill, sold the apartment house furniture and furnishings and the leasehold interest to a corporation in no way connected with either of these parties, for the sum of $10,000, and the written consent of the landlord for the transfer of the lease to it and the extension of its term for two years was pro-

cured. For some reason or other not very clear from the record, Hutchinson would not give his written consent to the transfer nor to the extension of the lease without payment to him of $5,000 of the purchase price under this sale. The balance, $5,000, was agreed to be paid in cash and by note to appellant for his interest in the lease, furniture and furnishings. Appellant executed a bill of sale of the furniture and furnishings and his leasehold interest to the purchaser found by the second broker. Upon these facts the court found that respondent's predecessors had been employed by appellant on October 24, 1918, as exclusive agents to sell the apartment house furniture and furnishings, known as the Van Siclen Apartments, agreeing to pay respondent a commission of five per cent of the selling price; that the property was subsequently sold and conveyed by appellant for $10,000, and that respondent's commission on such sale, under the contract, was five per cent of that selling price, and that no part of the commission has been paid. From these findings the court concluded that respondent was entitled to judgment against appellant for the sum of $500.

Appellant seeks reversal of the judgment upon the ground that, as he contends, the principal is not bound to pay a broker's commission for a service rendered when the principal's title failed and the possibility of failure, together with all the facts and circumstances relating to the condition of the title, was made known to the broker at the time the commission contract was entered into between him and his principal.

In support of this contention, appellant offered to prove that, before the written agreement was entered into between respondent and appellant, the terms and conditions of the lease under which appellant held the Van Siclen Apartments and the necessity of procuring the written consent of the landlord to any transfer

of the lease by him was made known to the broker. This evidence was refused, the court declaring his position to be that the broker did not undertake to furnish a good title and that it was up to the principal to do so, and parol evidence could not be received to contradict or vary the terms of the written contract. Appellant concedes in his brief that

"If respondent had such an exclusive contract, and if, during this period from October 24, 1918, to January 18, 1919, appellant Hanson was personally prohibited from selling the property to a third person, under penalty of paying respondent's commission, then the lower court was right in concluding that appellant was liable for the commission, providing this proposition of law is not overturned by superior and higher considerations of law, namely, that, where the broker knows of all defects in his principal's title and enters into the contract of brokerage, he cannot recover unless he meets the conditions or the conditions are removed, and if the principal fails to remove the conditions and fails to cure the defects in title which existed at the time the brokerage contract was entered into, and the deal falls through without any fault on the part of the principal, the principal is not liable."

This, however, incorrectly reverses the major and minor propositions of law. If the broker knew of the defects in his principal's title and entered into the contract of brokerage he could not recover, of course, unless he met the conditions or the conditions were removed. *Seattle Land Co. v. Day,* 2 Wash. 451, 27 Pac. 74. In other words, he takes the contract to procure a purchaser who is ready, willing and able to buy what the broker's principal has to sell, and if the broker knows that the principal has a title which the purchaser will not accept, then he has not produced a purchaser in accordance with the terms of his agreement. *Merritt v. Lillyblade,* 57 Wash. 159, 106 Pac. 621. On the other hand, here we have a special contract which

gives to a broker the right to negotiate any sale of the property involved for the definite time of thirty days, and thereafter until sold, "unless revoked by a written notice at the expiration of the thirty days."

The general rule as to such a contract is:

"A real estate broker who is given an exclusive agency for the sale of property is entitled to a commission on any sale thereof made by the principal either independently or through the efforts of another broker within the time specified in the contract of employment, although the exclusive agent's efforts did not contribute toward the sale." 19 Cyc. 264.

We would be inclined to hold, in accordance with the minority of the courts, that a contract giving the broker exclusive authority to find a purchaser for property, but not negativing the right of the principal to sell the property himself, is not violated by a sale by the principal, and in the event of such a sale, the agent is not entitled to a commission. *Ingold v. Symonds,* 125 Iowa 82, 99 N. W. 713; *Waterman v. Boltinghouse,* 82 Cal. 659. But here the case is that, before any notice of revocation had been given by the principal to respondent as his broker, appellant made or authorized the employment of another broker to procure the sale, and the sale was procured on the condition which was not met with the purchaser procured by the first broker. While we might not hold that appellant was personally prohibited from independently selling the property to a third person, we are certainly obliged to hold that he was prohibited from giving the property to another agent to sell when he had an exclusive agent in respondent.

Appellant also contends that the provision that the agency should continue in force after the thirty days until the property was sold, unless revoked by written notice at the expiration of thirty days, in effect consti-

tutes an agreement in perpetuity. This contention is not meritorious. The agency could easily be revoked at any time, either at or after the fixed period had expired, by written notice, as the contract provided, and there is certainly nothing in the nature of a perpetuity in such contracts.

Judgment affirmed.

MAIN, MACKINTOSH, PARKER, and MITCHELL, JJ., concur.