[No. 17843. Department Two. September 12, 1923.]

CALVIN PHILIPS & COMPANY, *Appellant,* v. FREDERICK
MERCY *et al., Respondents.*[1]

BROKERS (3, 12, 18)—EXCLUSIVE AGENCY—SUFFICIENCY OF SERVICES
—NEGOTIATION THROUGH OTHER AGENTS. A broker is entitled to his
commission for securing a loan, under an agreement providing that
application shall not be made elsewhere until an adverse decision
is rendered by the company, therein given the exclusive right to
take the loan, which was secured by the broker by the expenditure
of money.

Appeal from a judgment of the superior court for
Yakima county, Holden, J., entered November 13, 1922,
dismissing an action for a broker's commission, upon
motion for a directed verdict, after trial on the merits
to a jury. Reversed.

*Hartman & Hartman,* for appellant.

*Richards & Fontaine,* for respondents.

PEMBERTON, J.—This is an action to recover a com-
mission for securing a loan for respondents. On May
10, 1921, Calvin Philips, president of the appellant
company, visited Yakima and informed Mr. Brad-
shaw, manager of the Guaranty Trust Company, that
he would accept an application from respondents for a
loan of $22,500 upon certain real property of respond-
ents in the city of Yakima. Respondents refused to
apply for a loan of $22,500, insisting upon a loan for
$25,000. Thereupon Bradshaw prepared an applica-
tion for $25,000 and a commission agreement upon the
$25,000 which were signed by respondents and for-
warded to appellant. On May 21, respondent informed
Bradshaw that he had an opportunity to get a loan
for $35,000 and would like to withdraw his applica-

[1]Reported in 218 Pac. 4.

tion. Appellant, being informed of this desire, replied that the withdrawal would be satisfactory providing the respondent paid half the commissions and $25 expenses. On May 23, the Penn Mutual Life Insurance Company telegraphed appellant its approval of the loan, and on the 24th, appellant sent respondent notice of the acceptance of the loan, in which notice it requested the delivery of the abstract for the examination of the title. On May 27, respondent obtained a loan upon the property and other property from the Washington Mutual Savings Bank of Seattle in the amount of $35,000. Upon June 11, appellant learned that the property had been mortgaged to the Washington Mutual Savings Bank, and thereafter instituted this action for the amount of $1,250 upon the commission agreement signed by respondents. The case was tried before a jury. At the close of the evidence, each party moved for a directed verdict. The court dismissed the jury and entered judgment in favor of the respondents.

It is the contention of respondents that,

"The loan application is a mere request that the appellant attempt to secure a loan for the respondents. . . . There is nothing in the application that would bind the appellant in any way. It is not a contract; it can be nothing more than an offer to accept a loan if secured."

Respondent further contends that there was no consideration to support the agreement unless the offer was accepted prior to its withdrawal and calls our attention to the following rule of law:

"The offerer may revoke his offer before it is accepted, even though he has expressly declared in it that he will not, or has, by the very terms of the offer, allowed the offeree a certain number of days within which to accept it, as in the case of options or refusals,

unless the offer is under seal, or unless the agreement to hold it open is supported by a consideration." 13 C. J. 293, § 103.

"There is a radical distinction in regard to communication between offers which ask that the offeree shall do something and offers which ask that the offeree shall promise something. In offers of the former kind communication of the acceptance is ordinarily not required; in offers of the latter kind communication of the acceptance is always essential." 13 C. J. 284, § 88.

We must hold to the contrary upon the authority of *Philips & Co. v. Langlow,* 55 Wash. 385, 104 Pac. 610, wherein we held:

"Appellants contend that the facts show that the application was a mere tentative application to determine whether the loan would be made. A careful reading of the evidence convinces us, as it evidently convinced the jury, that the application was what it purported to be, and was not a mere inquiry."

The commission agreement provided in part as follows:

"Witnesseth, that the first party in consideration of the services rendered and to be rendered by the second party, in making, furnishing and for negotiating said loan, agrees to pay second party a cash commission of five per cent of the amount of said loan, equal to $1250."

A portion of the application also reads as follows:

"Application has not been and will not be made elsewhere, until an adverse decision is rendered by said Company, which is hereby given the exclusive right to take the proposed loan within thirty days from this date, and thereafter until the expiration of ten days from delivery to said Company of written notice of withdrawal. . . ."

Respondent having signed the contract for the payment of the commission, and appellant having ex-

pended money in the performance of his part of the agreement and actually secured the loan within the thirty day period provided in the contract, under decisions of this court, respondent should be required to pay the commission. This is an exclusive contract denying respondent the right to secure a loan elsewhere and this case comes within the general rule approved in *Brownell v. Hanson,* 109 Wash. 447, 186 Pac 873, as follows:

" 'A real estate broker who is given an exclusive agency for the sale of property is entitled to a commission on any sale thereof made by the principal either independently or through the efforts of another broker within the time specified in the contract of employment, although the exclusive agent's efforts did not contribute toward the sale.' " 19 Cyc. 264.

Under the evidence in this case, we find that the application and the agreement for a commission were not sent for the approval or rejection of appellant, but were intended to be accepted and were relied upon by appellant and the loan actually secured.

The judgment of the trial court is reversed, with directions to enter judgment for the amount requested in the complaint of appellant.

MAIN, C. J., TOLMAN, and PARKER, JJ., concur.

ON REHEARING.

[*En Banc.* February 18, 1924.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the opinion heretofore filed herein, and the judgment is therefore reversed as directed by that opinion.