[No. 20926. Department One. April 14, 1928.]

## A. J. Miles, *Respondent*, v. Ida M. Craig *et al.*, *Appellants*.[1]

[1] Reformation of Instruments (6, 20)—Mutual Mistake—Evidence—Sufficiency. The right to reformation of a deed is established by clear and convincing testimony where an irregular tract of land was surveyed and the boundaries marked upon the ground and visible possession taken and improvements started, in ignorance by both parties that the surveyor had made a mistake in commencing his survey twenty feet north of the center of the section, assumed as the starting point of the description in the deed.

[2] Same (12, 20)—Persons as to Whom Instruments May Be Reformed—Subsequent Purchasers—Notice. In such a case, the purchaser is entitled, also, to reformation of the deed as against a subsequent purchaser of the adjoining land, including the twenty-foot strip intended and supposed to have been conveyed to plaintiff, where, before consummation of the subsequent deal, the purchaser knew that plaintiff was in possession, as owner, and they jointly constructed a fence on the supposed line, especially where the subsequent conveyance purported to convey only the portion of the lot not conveyed to the plaintiff.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered February 9, 1927, upon findings in favor of the plaintiff, in an action to quiet title. Affirmed.

*James Collins Lloyd*, for appellants.
*McGregor & Fristoe*, for respondent.

Parker, J.—The plaintiff, Miles, commenced this action in the superior court for Benton county seeking a decree quieting his title as against the claims of the defendants, Mrs. Craig and Clarke, her grantee, to a strip of land twenty feet wide and 801.5 feet long, lying along the southerly boundary of a ten-acre tract conveyed to Miles by Mrs. Craig prior to the execution

[1]Reported in 266 Pac. 182.

of a conveyance by her to Clarke of land lying to the south thereof. Miles also seeks reformation of the conveyance by Mrs. Craig to him of the ten-acre tract so as to include the twenty-foot strip, in the event that it be determined that the technical description of that conveyance does not include the twenty-foot strip, and that his title thereto be quieted accordingly as against the claims of Mrs. Craig and Clarke. The action, being of equitable cognizance, proceeded to trial before the court sitting without a jury and resulted in a decree reforming the conveyance and quieting title in Miles as prayed for by him, from which Mrs. Craig and Clarke have appealed to this court.

The trial court did not make any formal findings of fact. We have read all of the evidence as brought here by a full statement of facts, and we think the controlling facts, as the trial court evidently viewed them and as we think it was warranted in viewing them, may be fairly summarized as follows:

On March 30, 1922, and for some years prior thereto, Mrs. Craig, then a widow, was the owner, as her separate property, of the whole of lot 1, being the fractional northeast quarter of the northwest quarter of section 14, township 14 north, range 26 E. W. M., in Benton county. That lot is approximately in triangular form, its northwesterly boundary being the southeasterly shore line of the Columbia river, its area being approximately twenty-five acres. On that day, Mrs. Craig, by due execution of a warranty deed, made conveyance to Miles of a ten-acre tract of land in that lot by the following description:

"Beginning at a point on the half section line 1452' north of the center of Section Fourteen (14), Township Fourteen (14), North, Range Twenty-six (26), E. W. M., thence north with a variation of twenty-two degrees and thirty minutes, 1000'; thence south sixty

degrees and seventeen minutes, west, 329'; thence south forty-eight degrees and twenty minutes, west, 369.4'; thence south thirty degrees and forty-three minutes, west, 386'; thence south seventy-one degrees and nine minutes, east, 801.5' to the place of beginning, containing ten (10) acres, more or less.''

That deed was thereafter, on April 25, 1922, duly recorded in volume 52 of Deeds at page 287 in the office of the auditor of Benton county. The northwesterly boundary so described follows approximately parallel to the shore line of the river, though some distance back therefrom, so as to include only, as was mutually intended, good agricultural land in the ten-acre tract. The southerly boundary line, 801.5 feet long, is the line here in dispute.

That conveyance was the result of previous negotiations carried on by one Weil, as agent for Mrs. Craig, he being duly authorized to find not only a purchaser for the lot or any portion thereof, but also to cause survey and marking upon the ground corners and boundaries of such portion or portions of the lot as might be so bargained for and sold. Weil, as such agent, having tentatively agreed with Miles for his purchase of ten acres of the lot to be surveyed and marked upon the ground, caused a survey to be made accordingly. In doing so, the center of the section was assumed to be an appropriate fixed starting point. Weil went with the surveyor to that point and showed him an old fence running east and west, supposed to be on the east and west half-section line, and gave the surveyor to understand that he might assume, without further survey or inquiry, to start from that point on the fence line as the center of the section. Accordingly, the surveyor ran therefrom 1452 feet north, along the north and south half-section line, to the place of the beginning of the description in the deed from Mrs.

Craig to Miles, as above quoted. The surveyor placed a stake at that point of beginning and at the point of beginning of each course around the boundary of the ten-acre tract, so that the southerly boundary line, 801.5 feet long, was thus plainly marked and fixed upon the ground, as were the other boundary lines. The conveyance being executed by Mrs. Craig accordingly, Miles, by tenant, then went into possession of the tract so surveyed and marked upon the ground.

Thereafter, in January, 1923, Miles personally went into possession of the ten-acre tract, as surveyed and marked upon the ground, and commenced to further improve it. Among other things, he dug a well near the southwest corner on the twenty-foot strip in question, some eight feet north of the southerly boundary, as surveyed and marked upon the ground. He erected a tent house a short distance farther west, some ten feet north of the southerly boundary, as surveyed and marked upon the ground, and constructed a water line, consisting partly of tiling and partly of wooden flume, for a distance of some 760 feet, about three feet northerly of, and parallel with, the southerly boundary, as surveyed and marked upon the ground. These improvements were visible assertions of possession by Miles.

Thereafter, in October, 1923, Clarke entered into a tentative oral agreement with Mrs. Craig for the purchase from her of the remainder of lot 1 lying principally to the south of Miles' ten-acre tract. Thereafter, in the fall of 1923, Miles and Clarke, laboring jointly, built a wire fence along the southerly boundary of the Miles ten-acre tract, as surveyed and marked upon the ground; that is, about three feet southerly and parallel with Miles' tile and flume line. The survey stake at the southeast corner, which had been placed there by the surveyor, had then been removed

by the grading of a road which had been established along the north and south half section line, that being the east boundary line of Miles' ten-acre tract. However, it is plain from the evidence that Clarke then learned that Miles was claiming that line as the southerly boundary of his ten-acre tract. On July 15, 1924, Mrs. Craig conveyed to Clarke, in pursuance of their previous tentative agreement, her remaining land in lot 1 lying principally south of Miles' ten-acre tract, by description reading as follows:

"All of Government fractional Lot No. 1, in Section Fourteen (14), Township Fourteen (14) North of Range Twenty-six (26) E. W. M., excepting that certain tract of land contained in said lot, and having an area of ten acres, more or less, and which was conveyed by the grantor herein, to one A. J. Miles, by warranty deed, dated March 30th, 1922, and filed for record April 25th, 1922, and recorded in Volume No. 52, of deeds, at page 287, of the records of Benton county, state of Washington."

By that deed, Mrs. Craig also conveyed to Clarke lots numbered 2 and 3 of that section. Thereafter Clarke caused another survey to be made with a view of ascertaining the location of the boundary lines of the lands so conveyed to him by Mrs. Craig. That survey, the theoretical correctness of which is now conceded, demonstrated the center point of the section to be twenty feet north of the point on the fence line assumed by Weil, Mrs. Craig's agent, and given by him to the prior surveyor, as the center of the section and the starting point of his survey. This demonstrated the true theoretical southerly boundary line of Miles' ten-acre tract to be twenty feet farther north than as by the prior survey it was established and marked upon the ground, along which Miles and Clarke constructed the fence. So, as finally submitted, this action became one on the part of Miles seeking

reformation of the deed given to him by Mrs. Craig for the ten-acre tract so as to include the twenty-foot strip lying immediately northerly from the line 801.5 feet long, as surveyed and marked upon the ground by the first survey made at the instance of Weil, Mrs. Craig's agent.

[1] We first inquire as to Miles' right of reformation of his conveyance from Mrs. Craig and the quieting of his title to the twenty-foot strip in question as against her. It seems to us that but little argument is needed to demonstrate that the making of the description in the conveyance by Mrs. Craig to Miles was a mistake on the part of both of them; that is, the mistake was mutual, in that it placed the whole ten-acre tract twenty feet farther north than they both intended. Manifestly, Miles, by reason of the survey made at the instance of Mrs. Craig's agents and the marking of the boundaries of the land upon the ground in pursuance thereof, had every reason to believe that he was, by that conveyance, as he intended, acquiring title to the ten-acre tract so surveyed and marked upon the ground. Manifestly, Mrs. Craig also intended that her conveyance to Miles should be of that same effect; that is, such intention must be imputed to her by reason of the acts of her authorized agents in the premises, though she personally may have had no specific actual intention as to just where upon the ground the boundaries of the ten-acre tract should be located. It was by reason of the peculiar form and location of the ten-acre tract bargained for between Miles and Mrs. Craig's agents that a survey and fixing of its boundaries upon the ground were necessary. The evidence, we think, clearly shows that she authorized such survey and location of the tract upon the ground, to the end that it be described by metes and bounds in her deed to Miles. We conclude that Miles is entitled

to reformation of the conveyance, and to the quieting of his title, as prayed for, as against Mrs. Craig. *Dennis v. Northern Pacific R. Co.,* 20 Wash. 320, 55 Pac. 210; *Lord v. Horr,* 30 Wash. 477, 71 Pac. 23; *Norton v. Gross,* 52 Wash. 341, 100 Pac. 734; *Turner v. Creech,* 58 Wash. 439, 108 Pac. 1084; *Roe v. Walsh,* 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146. We do not overlook the general rule that the evidence, to warrant reformation, must be clear and convincing, as announced in our decision in *Erickson v. Poole,* 126 Wash. 130, 217 Pac. 715, and our prior decisions therein cited; nor the general rule that mistakes, in order to warrant reformation, must be mutual, as announced by our decision in *Strutzel v. Richardson,* 136 Wash. 485, 240 Pac. 682, and our prior decisions therein cited. The evidence in this case, to our minds, fully satisfies both of these conditions.

[2] We next inquire as to Miles' right to reformation of his conveyance from Mrs. Craig and the quieting of his title to the twenty-foot strip as against Clarke. This is a question as to what extent Clarke was required to take notice of Miles' right to the twenty-foot strip as against Mrs. Craig. Miles was in visible possession of the twenty-foot strip. Clarke actually knew of such possession. Clarke knew that Miles claimed possession as owner up to the line on which they jointly constructed the fence, which was the line located upon the ground by the first survey. Clarke knew that Miles was claiming up to that line by virtue of his conveyance from Mrs. Craig. All of this was known to Clarke while he retained the larger portion, if not all, of the purchase price he was to pay to Mrs. Craig for the conveyance to him of the remainder of lot 1, and long before his purchase was consummated. It is further significant in this connection that Clarke took conveyance from Mrs. Craig, not by specific de-

scription independent of the conveyance of Mrs. Craig to Miles, but by description which, in terms, vested title in him only to the remaining portion of lot 1, title to which remained in Mrs. Craig after the conveyance by her of the ten-acre tract to Miles. It seems clear to us, as it manifestly did to the trial court, that these facts were such as Clarke was bound to take notice of as establishing Miles' right to the twenty-foot strip bounded on its southerly side by the established line of the first survey. *Elwood v. Stewart,* 5 Wash. 736, 32 Pac. 735, 1000; *Dennis v. Northern Pacific R. Co.,* 20 Wash. 320, 55 Pac. 210; *Kuhl v. Lightle,* 29 Wash. 137, 69 Pac. 630; *Wetzler v. Nichols,* 53 Wash. 285, 101 Pac. 867, 132 Am. St. 1075; *Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 Pac. 329, 36 L. R. A. (N. S.) 488; 2 Devlin on Real Estate (3rd ed.), § 760; 2 Tiffany on Real Property (2nd ed.), § 571; 23 R. C. L. 339.

The wives of Miles and Clarke are parties to this action and this appeal. We refer to Miles and Clarke alone in our discussion, merely for convenience of expression.

We conclude that the decree must be affirmed. It is so ordered.

MACKINTOSH, C. J., MITCHELL, and FRENCH, JJ., concur.