[No. 30320. Department Two. June 3, 1948.]

JOHN W. GEOGHEGAN, *Appellant,* v. FRANK M. DEVER *et al.,* *Respondents.*[1]

[1]Reported in 194 P. (2d) 397.

*Ferguson, Burdell & Armstrong* and *E. A. Geneste,* for appellant.

*Allen, Hilen, Froude & DeGarmo,* for respondents.

JEFFERS, J. — This action was instituted by John W. Geoghegan, a duly licensed real-estate broker, against Frank M. Dever and Mae Dever, his wife, to recover a real-estate commission claimed to be due him from defendants. The action is primarily based upon a real-estate commission contract, entered into on July 15, 1944, by plaintiff and defendant Frank M. Dever, which contract is as follows:

"Seattle, Wash., July 15, 1944

"To JNO. W. GEOGHEGAN, LICENSED BROKER, FRIDAY HARBOR, WASHINGTON

"In consideration of one dollar and services to be performed by you in endeavoring to effect a sale of the following described property, to-wit:

The Frank M. Dever waterfront property, 85.30 acres, situated on Nelson Bay, Henry Island, San Juan county, Washington; together with all buildings and other improvements thereon.

Lots 5, 8, 9 and 10, sec. 22, twp. 36 R. 4 W.W.M.

"The undersigned owners of said property, hereby give and grant unto you for the period of six months from date hereof and thereafter until withdrawn by 10 days' written notice, the exclusive right to sell said property, and agree to convey the same, or cause the same to be conveyed in good and sufficient Warranty Deed to the person or persons designated by you. The price of said property is to be $18,000.00 upon the following terms:      —Cash—

"Further agreeing in case of a sale to furnish an abstract of title or title insurance at seller's option, to said property, and to pay you a commission of five per cent. upon the sale price.

JNO. W. GEOGHEGAN    [Sd.]

Accepted:                    FRANK M. DEVER  [Sd.]  Owner
                    "Address 2214 26W, Seattle, Wash."

The complaint alleged in substance that plaintiff thereafter performed all the conditions of the contract to be done on his part; that during the life of the contract, plaintiff introduced one Lee Cheminant to defendant Frank Dever; that Cheminant was ready, able, and willing to buy defendants' property; and that such property was subsequently, on or about June 21, 1946, sold to Lee Cheminant for the sum of thirty-two thousand dollars. It was further alleged that plaintiff's commission under the contract would amount to sixteen hundred dollars; that plaintiff has made demand upon defendants for such commission, but that defendants have refused, and still refuse, to pay all or any part of such commission.

Defendant Frank Dever by his answer admitted signing the contract set out in the complaint; admitted that the community property owned by himself and his wife in San Juan county was sold to Lee Cheminant in June, 1946, and that plaintiff has demanded sixteen hundred dollars, which this defendant refuses to pay. Defendant Frank Dever denied the other material allegations of the complaint.

As an affirmative defense, defendant Frank Dever alleged that any and all real estate appearing in the record name of Frank Dever, in San Juan county, was the community property of himself and his wife, Mae Dever; that Mae Dever did not enter into any real-estate commission contract with plaintiff, or authorize Frank Dever to enter into

any such contract, or ratify or approve any act of his in connection therewith.

It was further alleged that the real estate described in the commission contract was not the real estate owned by Frank Dever and his wife, and that neither defendant Frank Dever, nor the community composed of defendant Frank Dever and his wife, nor Mae Dever, had ever been the owners of lot 5, section 22, township 36 north, range 4 west W. M., nor had any interest therein.

It was further alleged that defendant Frank Dever, after waiting a reasonable length of time for plaintiff to effect a sale, canceled plaintiff's authority and gave plaintiff both oral and written notice of such cancellation; that thereafter plaintiff abandoned all efforts to effect a sale of the property.

By her answer, defendant Mae Dever stated that she had no knowledge as to the truth of the allegations of the complaint relative to the commission contract, and therefore denied such allegations. She also denied all of the other material allegations contained in the complaint.

As an affirmative defense, she alleged that all the real property in San Juan county standing in the name of Frank Dever was the community property of Frank M. Dever and Mae Dever; that she, at no time, had any knowledge of the transactions set forth in the complaint; that she never assented thereto, nor did she authorize or empower Frank Dever to execute in her behalf the agreement set forth in the complaint or approve any of the other acts alleged in the complaint; and that, in so far as defendant Mae Dever and the community were concerned, she disaffirmed and refused to be bound by any of the purported acts of Frank Dever alleged in the complaint.

Plaintiff, by his reply, denied the material allegations of the affirmative matter set up in the answers of both defendants, except he admitted that the defendants have never been the owners of lot 5, section 22, township 36 north, range 4 west W. M., such description appearing in the commission contract, as set forth in the complaint, as a portion of the property therein listed, and which, by mutual mistake and error of the parties thereto, was so described, whereas the

description as to that particular lot should have been lot 5, section 23, township 36 north, range 4 W. W. M.

The cause came on for hearing before the court on April 8, 1947, and, after testimony had been received, the court, on April 14, 1947, entered a judgment dismissing the action. The judgment was entered upon the theory advanced by defendants, that the contract was void and could not be reformed. Plaintiff filed motions for judgment notwithstanding the decision or, in the alternative, for a new trial, which motions were denied, and this appeal by plaintiff followed.

Appellant states that the court erred in rendering its oral decision against appellant; in dismissing the action; in denying appellant's motions for judgment notwithstanding the decision or for a new trial; and in entering its decree dismissing the action.

The material facts appearing in the record may be stated as follows: In 1944, respondents, Frank Dever and Mae Dever, were the owners of certain community real estate located in the San Juan Islands, which they had acquired in 1927. The property is situated on Henry Island, San Juan county, Washington, and is described as follows: Lots 8, 9, and 10, section 22, township 36 north, range 4 west W. M., and lot 5, section 23, township 36 north, range 4 west W. M. Appellant, John Geoghegan, a duly licensed real-estate broker with offices at Friday Harbor, Washington, became interested in this property and asked Frank Dever for an exclusive listing on it. Dever, who was passing through Friday Harbor at the time, orally agreed to give appellant an exclusive listing. Appellant prepared and mailed to Dever a written contract covering the oral listing agreement, which written agreement Frank Dever signed and mailed back to appellant. The contract which Frank Dever signed is the one hereinbefore set out. Mr. Dever told his wife about signing the contract some days later. As stated, Mae Dever did not sign it.

The description of the property in the commission contract is inaccurate, in that all the lots are described as being in section 22, whereas in fact lot 5 is located in section 23. Also, the designation "N," which indicates that the town-

ship is in the north range, was omitted. The description of the property as set forth inaccurately in the contract was obtained over the telephone by Geoghegan from the office of the county treasurer at Friday Harbor. Appellant did not learn of the error in the description until the filing of the answer or shortly before trial. When Dever signed the contract, he was under the impression that the real estate therein described was his tract of land on Henry Island and was not aware of the mistake. Shortly after the execution of the contract, respondent mailed appellant a key to the house on the property. Mr. Dever apparently thought that the exclusive listing agreement automatically terminated or became an open listing at the end of six months, and he gave another broker, Eastman, a two weeks exclusive listing in the early part of 1945, and an open listing to still another broker in the spring of 1945.

In the summer of 1945, Geoghegan took a Mr. Moffett to the Dever land on several occasions, in an effort to sell him the property, and, on one of these trips, Dever was with them. During this period, appellant corresponded with Dever regarding his efforts to interest Moffett in the property. In a letter written by Dever to appellant on or about August 7, 1945, respondent Dever referred to the exclusive listing agreement as follows:

"In regards to your commission, what would it be in a case like this where I am taking part in the sale of it. When your exclusive contract run out I quoted a price of $20,000 to two Seattle real estate firms who have been working on it quite a lot on that basis, but knowing what I have put in the place I have been indifferent about whether it is sold now or not, because I feel that just after the war and during the reconversion period, values outside are going up to something like city values have gone up the past two or three years."

The above letter was written in longhand by Dever, and, when he was questioned as to whether the second sentence in the quoted portion of the letter was intended to read "When your exclusive contract run out," or "runs out," he read it "run out."

Appellant undoubtedly knew that other real-estate brokers were endeavoring to effect a sale of the property, for on August 10, 1945, he wrote respondent:

"When you had your property listed with Eastman and others some time ago, they asked a commission of ten per cent (10%) as all mainland realtors do. Therefore I believe my commission of only five per cent (5%) is very fair under the circumstances."

On August 19, 1945, Dever wrote appellant that Mr. Moffett might be taking someone up during the week to look the tract over, and that he wanted appellant to go along to keep them from roaming around by themselves. No sale was made to Moffett.

Dever stated that he tried to get the key to the house from appellant after the Moffett deal, but that Geoghegan stalled off returning it.

In October, 1945, respondents' son, Kenneth Dever, was employed as a salesman by Russell L. Brackett's real-estate office in Seattle. Respondent Dever, in February or early in March, 1946, listed the Dever land with Russell Brackett under an exclusive six months' agreement. Kenneth Dever attempted to effect a sale of the property, and Brackett advertised it for sale in the Seattle Times, the first advertisement appearing in the issue of March 3, 1946. On April 7, 1946, the Devers went up to the property for the purpose of placing a Brackett sign thereon, and Mrs. Burnett, to whom we shall hereinafter refer, stated she saw such a sign when she visited the property with appellant sometime after April 15th.

The ultimate purchaser of the Dever property and the man who signed the earnest-money receipt and real-estate contract was Lee Cheminant. John Koester and his sister, Christine Burnett, were associated with Cheminant in the purchase of the property and financed the deal. There is considerable dispute in the testimony relative to Mrs. Burnett's participation in the transaction. She testified that she did not contact the Brackett office until after she had met appellant and seen the property in April, 1946. Kenneth Dever stated that Mrs. Burnett saw him on March

8, 1946, in regard to the property, at which time he was employed by Brackett. A prospect slip, dated March 8, 1946, made out by Kenneth Dever, was introduced in evidence. Russell Brackett testified that he met Mrs. Burnett in his office early in March, 1946, and talked with her about financing the purchase of the property.

Cheminant, to whom we have referred, first came to appellant's office on April 2, 1946, to inquire about some other property on Henry Island. Appellant testified in this connection, refreshing his memory from his log book. On April 4, 1946, while appellant was showing Cheminant and his partner Henry Island, he showed him the Dever property, as well as other property on the island. On April 7, 1946, Dever and his sons visited appellant at his office in Friday Harbor. Geoghegan introduced them to Cheminant and Koester, stating that they were interested in the Dever property.

Dever stated that he had told appellant Brackett was working on the job, and that he wanted the key, but appellant put him off and he did not get the key.

There is no question but that appellant introduced Cheminant and Koester to respondent on April 7, 1946, in appellant's office and informed Mr. Dever that he, Geoghegan, was trying to interest them in the Dever property.

Cheminant and appellant carried on further negotiations concerning the Dever property during April and part of May, 1946, and appellant, on several occasions, tried to telephone Mr. Dever concerning the matter but was unable to reach him. On May 14, 1946, appellant received a written notice from Dever canceling the commission contract, pursuant to the ten-day provision of the contract. Appellant continued his negotiations with Cheminant, quoting him a price of eighteen thousand dollars for the property. Appellant testified that Cheminant called Mr. Dever from appellant's office and was told by Dever to telephone his son, Kenneth Dever, in Seattle. On May 20, 1946, Cheminant telephoned Kenneth Dever from appellant's office and arranged to meet him in Seattle. Appellant further stated that on May 21, 1946, Cheminant

and Mrs. Burnett were in his office concerning this property, and on May 22nd Cheminant was there again.

In the course of Cheminant's negotiations with Kenneth Dever, the price of the property was repeatedly raised, until the sum of thirty-two thousand dollars was agreed upon. On May 22, 1946, Cheminant accepted Dever's terms, and an earnest-money receipt covering the sale of the property was executed in the office of Russell Brackett.

Respondents contend that the trial court correctly held that the real-estate commission contract, signed by Dever, and giving to appellant the exclusive right to sell the property, was void under the statute because it contained an erroneous description of the property, and, being a void contract, it could not be reformed. As stated, there were two errors in the description: First, the designation "N" (north) was omitted preceding the designation "R" (range); and second, lot 5 was described as being in section 22, when in fact it is located in section 23. The other three lots contained in the description were correctly described as being in section 22. Respondent's contention and the trial court's decision are based upon the provisions of Rem. Rev. Stat., § 5825 [P.P.C. § 577-3], which reads:

"In the following cases specified in this section, any *agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized,* that is to say: (1) every agreement that by its terms is not to be performed in one year from the making thereof; (2) every special promise to answer for the debt, default, or misdoings of another person; (3) every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry; (4) every special promise made by an executor or administrator to answer damages out of his own estate; (5) *an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.*" (Italics ours.)

Respondents contend that a real-estate broker's contract for employment under the statute must be so complete in itself that it is unnecessary to resort to parol evidence to

establish any element of the contract; that the property must be described with such definiteness, particularity, and precision that nothing need be shown by parol; and that, if a broker's contract fails to contain such a description of the property, it is void under the provisions of the statute. To sustain their contention, respondents cite as authority: 80 A. L. R. 1456; *Cushing v. Monarch Tbr. Co.*, 75 Wash. 678, 135 Pac. 660, Ann. Cas. 1914C, 1239; *Black v. Milliken*, 143 Wash. 204, 255 Pac. 101; *Grammer v. Skagit Valley Lbr. Co.*, 162 Wash. 677, 299 Pac. 376; *Richey v. Bolton*, 18 Wn. (2d) 522, 140 P. (2d) 253; *Leo v. Casselman*, 29 Wn. (2d) 47, 185 P. (2d) 107. In support of the trial court's holding that the instant contract could not be reformed because it is void, respondents quote from 53 C. J. 915, Reformation of Instruments, § 17, as follows:

"Inasmuch as reformation depends on the existence of a valid contract, equity will not reform a void instrument."

Respondents also cite and quote from the following cases: *Marshall v. Hillman Inv. Co.*, 151 Wash. 529, 276 Pac. 564; *Martinson v. Cruikshank*, 3 Wn. (2d) 565, 101 P. (2d) 604; and *Fosburgh v. Sando*, 24 Wn. (2d) 586, 166 P. (2d) 580.

Appellant contends that the mistake of describing lot 5 as being in section 22, when in fact it is located in section 23, is not a case of insufficient or indefinite description, as in the cases cited by respondents, but is a case of an incorrect property description resulting from a mutual mistake, which is an error that may be reformed by the court to express the true intention of the parties.

Being unable to find any cases in this state which directly hold that a real-estate commission contract may be reformed because of an error in the description of the property being caused by mutual mistake, appellant cites and relies upon cases in which the property description in deeds, liens, real-estate contracts, and mortgages have been reformed because of mutual mistake: *Mohr v. Johnson*, 137 Wash. 391, 242 Pac. 385; *Miles v. Craig*, 147 Wash. 530, 266 Pac. 182; *Johnston v. Mortensen*, 155 Wash. 547, 285 Pac. 438; *Spencer v. Patton*, 179 Wash. 50, 35 P. (2d) 768; *Kaufmann v. Woodard*, 24 Wn. (2d) 264, 163 P. (2d) 606.

Respondents contend that the cases cited by appellant are not applicable to the case at bar, because such cases were governed by Rem. Rev. Stat., § 10550 [P.P.C. § 497-1], which reads in part:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . . ."

and Rem. Rev. Stat., § 10551 [P.P.C. § 498-1], which reads:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

Respondents recognize that the sections last referred to are statutes of fraud, but contend they require a different interpretation from § 5825, because the former simply require that conveyances of an interest in land "shall be in writing," whereas § 5825 provides that real-estate brokerage contracts *shall be void* unless such contracts be in writing.

■ We have been unable to find any support for such a distinction. This court has held that a property description meets the requirements of § 5825, *supra*, if it is a sufficient description under any other phase of the statute of frauds. *Cushing v. Monarch Tbr. Co.*, 75 Wash. 678, 135 Pac. 660; *Baylor v. Tolliver*, 81 Wash. 257, 142 Pac. 678.

■ We have held that, in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony; that, if a contract or deed does not contain such a description, it is void under the statute of frauds and not subject to reformation. *Martinson v. Cruikshank*, 3 Wn. (2d) 565, 101 P. (2d) 604; *Fosburgh v. Sando*, 24 Wn. (2d) 586, 166 P. (2d) 580. In neither of the cases last cited was it alleged that the error in description was caused by a mutual mistake of the parties.

■ We are of the opinion that the cases last cited and the other cases cited by respondents, which involve incomplete and insufficient property descriptions, because of

which we held the contracts were void under the statute of frauds and not subject to reformation, do not preclude reformation in a case such as this, where the parties entered into a contract containing all the terms required by the statute, but one or more of which, because of mutual mistake, were incorrectly stated.

The following rule was announced in *Silbon v. Pacific Brewing & Malting Co.*, 72 Wash. 13, 129 Pac. 581:

"The appellants first assign that the court erred in permitting the introduction of evidence tending to show a mutual mistake in the execution of the lease, contending that to do so was to permit the terms of a written instrument to be varied by a contemporaneous parol agreement. But it is among the acknowledged powers of the courts to reform *written instruments* under circumstances such as were shown here. *Where there has been an agreement actually entered into which the parties have attempted to put in writing, but have failed because of a mistake either of themselves or of the scrivener, the courts having jurisdiction in matter of equitable cognizance have power to reform the instrument in such manner as to make it express the true agreement*; and this in any action or proceeding where a party to the agreement seeks to take advantage of the mistake. True, the evidence that there was such a mistake must be clear and convincing before the jurisdiction will be exercised, a mere preponderance of the evidence not being sufficient; but there is no question, in this jurisdiction at least, that the power to reform the instrument exists. [Citing authority.]" (Italics ours.)

See *Lord v. Horr*, 30 Wash. 477, 71 Pac. 23; *Norton v. Gross*, 52 Wash. 341, 100 Pac. 734; *Mohr v. Johnson*, 137 Wash. 391, 242 Pac. 385; *Miles v. Craig*, 147 Wash. 530, 266 Pac. 182; *Johnston v. Mortensen*, 155 Wash. 547, 285 Pac. 438; *Stubbe v. Stangler*, 157 Wash. 283, 288 Pac. 916; *Spencer v. Patton*, 179 Wash. 50, 35 P. (2d) 768; *Omicron Co. v. Linge*, 189 Wash. 157, 63 P. (2d) 527; *Kaufmann v. Woodard*, 24 Wn. (2d) 264, 163 P. (2d) 606.

The description of the property was obtained over the telephone by appellant from the office of the county treasurer at Friday Harbor, and was either given to him inaccurately or inserted incorrectly in the contract. Appellant

did not know the property was not properly described until shortly before trial. There is no question but that, when respondent Dever signed the contract, he thought the real estate therein described was the tract of land owned by him and his wife on Henry Island, and that he intended to give to appellant an exclusive listing of that property. Both parties to the contract thought the description correct and recognized that the contract was a valid one, giving to appellant an exclusive listing of the property until at least six months from the date of its execution had elapsed.

The fact that, due to the neglect of either or both of the parties to verify the description, a mistake was made, or the fact that appellant wrote the erroneous description, would not, in our opinion, affect the mutuality of the mistake.

We stated in *Carlson v. Druse*, 79 Wash. 542, 548, 140 Pac. 570:

"The appellants argue that the mistake was the result of the respondent's negligence, and that he cannot have his deed reformed. If this were true, there would be few contracts reformed. Mistakes in written instruments are usually due to negligence upon the part of one or both the parties, where there is no fraud. This court has uniformly taken the view that conveyances of real property may be reformed so as to effectuate the actual intention of the parties where there has been a material and mutual mistake, and where that mistake has been shown by clear and convincing evidence."

See, also, *Rosenbaum v. Evans*, 63 Wash. 506, 115 Pac. 1054.

"It is settled law in this state, however, that where a mutual mistake in description has actually been made in an executory contract or in a deed, such contract or deed may be reformed to set forth correctly the mutual intention of the parties." *Peterson v. Paulson*, 24 Wn. (2d) 166, 177, 163 P. (2d) 830.

Being of the opinion the rule last above stated is also applicable to an agreement employing a broker to sell real estate under § 5825, *supra*, and being of the further opinion that the evidence of a mutual mistake was clearly

and convincingly shown herein, it follows that the commission contract in the instant case was subject to reformation and, under the facts, should be considered reformed to comply with the intention of appellant and respondent Dever. As thus considered, the contract would properly and correctly describe the Dever property on Henry Island.

Appellant contends, and respondents concede, that the mistake in the property description consisting of the omission of the designation "N" (north) preceding the designation "R" (range) may be considered corrected by the process of judicial notice, in accordance with the rule announced in *Schmidt v. Powell*, 107 Wash. 53, 180 Pac. 892, and *Chapman v. Milliken*, 136 Wash. 74, 239 Pac. 4.

Respondents further contend that the exclusive commission contract was terminated by a letter written by respondent Dever to appellant on August 7, 1945, and that, in any event, appellant is estopped by his conduct after receipt of the letter from claiming that he had an exclusive listing of the property.

The brokerage contract in question was dated July 15, 1944, and contained the following provision relative to its duration and termination:

"The undersigned owners of said property hereby give and grant unto you for the period of six months from date hereof *and thereafter until withdrawn by ten days written notice,* the exclusive right to sell said property." (Italics ours.)

The portion of Dever's letter of August 7, 1945, which respondents rely upon as written notice of withdrawal of the exclusive right to sell the property, reads as follows:

"*When your exclusive contract run out* I quoted a price of $20,000 to two Seattle real estate firms, who have been working on it quite a lot on that basis." (Italics ours.)

When questioned as to whether the fifth word of the excerpt was "run" or "runs," Dever read the word as "run." Respondents, while admitting that the letter does not specifically state "I hereby cancel the exclusive contract," contend that it is clear from the letter that respondent Dever considered the contract terminated. Reading

the letter as a whole, it is clear to us that Dever considered that a brokerage contract of some sort existed between him and appellant. The letter discusses a prospective customer, inquires as to what appellant's commission would be if Dever took part in selling the property, and asks appellant to communicate any "better idea" he might have. As shown by his answer to respondent Dever's letter, appellant did not consider the real-estate contract canceled or withdrawn. His only reference to the contract in his reply was as follows:

"When you had your property listed with Eastman and others some time ago, they asked a commission of ten per cent (10%) as all mainland realtors do. Therefore I believe my commission of only five per cent (5%) is very fair under the circumstances."

The commission contract provided in clear and unequivocal terms that notice of withdrawal of the contract was to be given by ten days' written notice. We are of the opinion that respondent Dever's letter did not constitute a cancellation or withdrawal of the contract. It seems quite apparent that Dever realized that written notice of withdrawal was necessary, as he actually did give such a notice on May 14, 1946, eight days before Cheminant signed the earnest-money receipt.

In the case of *Gunning v. Muller*, 118 Wash. 685, 204 Pac. 779, a similar provision in regard to the termination of a real-estate commission contract was discussed. The opinion states:

"No notice of cancellation or withdrawal of the contract was ever given, therefore it was in force at the time of the sale. Nor is there any objection to the contract that it may be considered as extending over an indefinite or unreasonable length of time, for as was said in *Brownell v. Hanson, supra,* [109 Wash. 447, 186 Pac. 873], of a similar provision, 'The agency could easily be revoked at any time, either at or after the fixed period had expired, by written notice, as the contract provided.' "

Respondents also contend that, even if respondent Dever's letter did not terminate the contract, appellant is estopped

from relying on the contract, because subsequent to the receipt of the letter

". . . he [appellant] did not advise respondent that respondent had no right to list the property elsewhere. He did not advise respondent that no notice of termination of the exclusive contract had been given. He did not advise respondent that the exclusive listing agreement was still effective. The appellant, upon receipt of the letter from respondent (Ex. 4) had a legal duty to do these things, and failing to do them he is forever barred from asserting that he still had the exclusive listing of the property."

■■ It is our opinion that, under the facts in this case, there was no duty upon appellant to notify respondent Dever as to the proper procedure for terminating the contract, when that procedure was set out specifically in the contract which respondent had signed.

We stated in *Wechner v. Dorchester,* 83 Wash. 118, 122, 145 Pac. 197:

"In order to create an estoppel it is necessary that:
" 'The party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available *means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth,* there can be no estoppel.' 11 Am. & Eng. Ency. Law (2d ed.), p. 434." (Italics ours.)

We are of the opinion that, when the above rule is applied to the facts in this case, there is no basis for respondents' claim of estoppel.

Respondents further contend that the respondent wife and the community are not bound by the real-estate commission contract signed by the respondent husband alone, because the contract constituted an encumbrance against community real property, and, never having been signed or ratified by the wife, under the provisions of Rem. Rev. Stat., § 6893 [P.P.C. § 434-29], can have no binding effect upon the wife or the community. Section 6893 provides:

"The husband has the management and control of the community real property, but he shall not sell, convey, or encumber the community real estate, unless the wife join

with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed, or encumbered, and such deed or other instrument of conveyance must be acknowledged by him and his wife: Provided, however, that all such community real estate shall be subject to the liens of mechanics and others for labor and materials furnished in erecting structures and improvements thereon as provided by law in other cases, to liens of judgments recovered for community debts, and to sale on execution issued thereon."

Respondents, in support of this contention, rely principally upon the case of *McGlauflin v. Merriam,* 7 Wash. 111, 34 Pac. 561, in which the husband alone had entered into a real-estate broker's commission contract for the sale of certain community real estate. The broker brought suit " . . . to recover a commission for finding a purchaser for certain real estate, the community property of said McGlauflin and the appellant [wife], and a judgment therefor was rendered in his favor."

An execution was issued upon the judgment, and a levy made upon community lands. Appellant wife brought an action to enjoin a sale thereof. This court, in reversing the lower court, stated:

"There was nothing to show that George McGlauflin, the execution debtor, had any authority from his wife to sell, contract to sell, or to find a purchaser for said community lands, and the lands were not in fact sold. The husband, having no authority to sell community real estate, *cannot bind the same for any indebtedness incurred by him in employing a broker to find a purchaser therefor,* and consequently the judgment obtained by respondent Merriam was not a charge upon the community lands." (Italics ours.)

It may be stated that, in the cited case, the original action was brought against both husband and wife, but a demurrer on the part of the wife to the complaint was sustained, and the action was dismissed as to her, so the judgment in the original suit for the broker's commission was against the husband only.

Appellant contends that the *McGlauflin* case has been overruled by subsequent decisions, and cites and relies principally upon three cases in support of his contention: *Philips*

& Co. *v. Langlow,* 55 Wash. 385, 104 Pac. 610; *Philips & Co. v. Mercy,* 126 Wash. 376, 218 Pac. 4, 222 Pac. 902; and *Philips & Co. v. Bergman,* 130 Wash. 346, 227 Pac. 321. Each of the three cases above mentioned was brought for the purpose of recovering a commission in securing a loan. In the *Langlow* and *Bergman* cases, the loan was to be secured by a mortgage upon community property, and the defendants contended that the community could not be bound because the commission contract was signed by the husband only. In discussing this question in the *Bergman* case, we stated:

"This question is no longer an open one in this jurisdiction, for this court, in *Calvin Philips & Co. v. Langlow,* 55 Wash. 385, 104 Pac. 610, and *Calvin Philips & Co. v. Mercy,* 126 Wash. 376, 218 Pac. 4, has held the community liable on a contract for a commission in negotiating a loan on community property, signed by the husband alone. The debt which the husband, as manager of the community, contracted was for a community purpose, and a judgment thereon is collectible out of the community estate."

And in discussing the case of *McGlauflin v. Merriam, supra,* the opinion continues:

"That case does not seem to consider the fact that the debt which the husband there *attempted* to create partook of a community character, *and it may be that that case can be distinguished from our later cases by reason of the fact that the sale which the husband was there attempting to make was not for a community purpose or for the benefit of the community.* But the language of that case is broad enough to cover the situation existing in the *Langlow* and *Mercy* cases, *supra,* and it would appear that those later cases have overruled the *McGlauflin* case, *supra.*" (Italics ours.)

We are of the opinion that the facts in the *McGlauflin* case, upon which the decision was based, are distinguishable from the facts in the three later cases above referred to. In the *Bergman* case, *supra,* the money from the loan was to be used in payment of a debt on the community property, and the balance remaining was to be used in a community undertaking. In the *Langlow* case, *supra,* Louis Langlow applied to Calvin Philips & Company for a loan and signed an application for a loan from the Penn Mutual

Life Insurance Company for thirty-five thousand dollars, for the term of five years, at five and one-half per cent per annum, to be secured by a first mortgage lien upon certain real estate. At the same time, Louis Langlow signed an agreement to pay Calvin Philips & Company, for its services in procuring the loan, a commission of one and one-half per cent of the amount of the loan. Thereafter, the Penn Mutual accepted the application and agreed to make the loan as applied for. The borrower desired the money to be advanced for the construction of a building. While these negotiations were pending, appellant Langlow obtained a loan from another party, and then declined to complete the loan with the insurance company. Calvin Philips & Company thereupon demanded its commission, which was refused, and the action to collect the commission followed. The opinion states:

"After the application was accepted, the *applicants* proceeded to carry out the loan [to be made by Penn Mutual], which they no doubt would have completed had they not obtained the money elsewhere, at the same rate of interest and upon substantially the same terms as it was offered by the insurance company, but without the payment of any commission." (Italics ours.)

We held that, while the separate property of Ingeborg Langlow, wife of Louis Langlow, was not liable for the commission, the debt was clearly a community debt, contracted by the husband in the management of the community estate, for the benefit of the community, and that the community was liable, and the judgment against Mrs. Langlow, as a member of the community, was proper. In the *McGlauflin* case, the husband incurred an indebtedness by employing a broker to find a purchaser for community property, which he did not have the authority of his wife to sell, and which he could not convey unless his wife joined in the conveyance. The husband not possessing the power to sell the community property, and there being no ratification by the wife of the brokerage contract, or authority given by the wife for the husband to enter into such a contract, it seems to us to follow that no benefit accrued to the

community from the act of the husband in employing the broker to find a purchaser, and such act lacked community purpose and constituted a mere idle gesture, in so far as the community is concerned, unless ratified by the wife.

We are of the opinion that the rule announced in the *McGlauflin* case, *supra*, that "the husband, having no authority to sell community real estate, cannot bind the same for any indebtedness incurred by him in employing a broker to find a purchaser therefor," is still the law of this state and is a proper rule to apply to facts such as were shown to exist in the *McGlauflin* case.

There is one distinction between the facts in the *McGlauflin* case and the facts in the instant case, which should be considered. In the *McGlauflin* case, the lands in question were not in fact sold, and in the instant case they were.

The question here presented is whether or not respondent wife, by joining her husband in signing the earnest-money receipt on May 22, 1946, agreeing to sell the community property in question to Lee Cheminant, thereby ratified appellant's commission contract.

We stated in *In re Horse Heaven Irr. Dist.*, 19 Wn. (2d) 89, 141 P. (2d) 400:

"We have adopted the rule that, if a husband enters into a contract to sell or lease community real estate without his wife joining therein, and she either consents thereto or subsequently sanctions or ratifies his act, neither she nor the community may thereafter disaffirm it. *Konnerup v. Frandsen*, 8 Wash. 551, 36 Pac. 493; *O'Connor v. Jackson*, 33 Wash. 219, 74 Pac. 372; *Hay v. Chehalis Mill Co.*, 172 Wash. 102, 19 P. (2d) 397; *Bowman v. Hardgrove*, 200 Wash. 78, 93 P. (2d) 303."

We also stated in the early case of *Heinzerling v. Agen*, 46 Wash. 390, 90 Pac. 262, that:

"The general rule undoubtedly is that a principal, before he can be charged with the unauthorized act of an agent by ratification must be shown to have ratified the *contract with full knowledge of all the facts attending the transaction*; the only exception being where he accepts the benefits of the contract, or intentionally assumes the obligation without inquiry." (Italics ours.)

We think the very basis for ratification is knowledge of all the material facts. See *General Paint Corp. v. Kramer*, 57 F. (2d) 698. The only evidence as to knowledge of the commission contract possessed by Mrs. Dever was the testimony given by Mr. and Mrs. Dever. The substance of Mr. Dever's testimony on this point was that Mrs. Dever was not with him when he signed the contract and did not know that he had signed it until several days later, when he said something to her about it; that, at the time, Mrs. Dever stated she was against selling the property; that Mrs. Dever never saw the contract.

Mrs. Dever stated that she never saw the contract until it was produced in court; that her husband said something to her about the contract some time after he had signed it, at which time she said:

" 'I shouldn't have thought you would have done that without talking it over with me, and you knew I would not be willing to sell the property. But I am not going to worry about it because I didn't sign the contract. So it isn't legal,' I said. And we just let it go at that."

It is apparent from the above testimony that respondent wife had no knowledge of the provisions of the commission contract. There is no evidence that she was ever apprised of the duration of the contract, the amount of the commission, and the other essential details which would be necessary to an understanding of the nature and scope of the transaction. There is no evidence that Mrs. Dever knew that Cheminant, the purchaser who had signed the earnest-money receipt, had been produced by appellant.

We are of the opinion the following is the correct rule to be applied here:

"In order that her conduct or acts may operate as a ratification, it is essential that the wife should have full knowledge of all the facts and a reasonable opportunity to repudiate the transaction; and the retention of benefits after acquiring knowledge of the facts does not amount to a ratification if at that time conditions are such, without the fault of the wife, that she cannot be placed in statu quo, or cannot repudiate the entire transaction without loss." 41 C. J. S. 782-783, § 297.

We call attention to the reason for the rule requiring full knowledge, as quoted from the case of *Williams v. Thrasher* (C.C.A. Tex.), 62 F. (2d) 944, 946, and appearing in a footnote on p. 1083 of 2 C. J. S., under the general heading of Agency.

While we appreciate, as stated in the *Heinzerling* case, *supra*, that an acceptance of the benefits of a contract is an exception to the rule relative to ratification therein stated, we are of the opinion that that exception has no application to the facts in this case, under the rule hereinbefore quoted from 41 C. J. S. 782-783, § 297.

We are of the opinion, therefore, that there was no ratification by Mrs. Dever of the real-estate commission contract, and that such contract is not binding upon her or the community.

However, we are of the opinion that the fact that the commission contract is not binding upon Mrs. Dever or the community does not operate to relieve respondent Dever. As stated in *Thomas v. Young,* 42 Idaho 240, 244, 245 Pac. 75:

"There is no dispute that the defendant Charles Young entered into a written contract with the plaintiffs to pay them certain commissions for securing a purchaser for the property in question, and we are of the opinion that the court below erred in holding that the complaint failed to state a cause of action as to Charles Young by reason of the fact that the property in question was community property. He might have been unable to comply with his part of the contract but that would not release him from his liability to pay plaintiffs for their services if they had fully complied with the terms of the contract."

We held in *Lemcke Co. v. Nordby,* 117 Wash. 221, 200 Pac. 1103, that, where a wife enters into a contract to pay a broker's commission on a sale of community property, she is individually liable on the contract.

However, before appellant would be entitled to recover from respondent husband, it must be determined whether or not appellant performed the services required of him to be performed under the contract. We are of the opinion the evidence shows that appellant produced a

purchaser who was ready, able, and willing to buy the property, under the terms of the contract, and who did eventually buy the property, although at a greater price than that quoted him by appellant. Appellant's exclusive commission contract was in effect when the earnest-money receipt was signed by the purchaser in Brackett's office, and, in our opinion, there was performance by appellant under the rule that, when property is listed with a real-estate broker under an exclusive agency contract, and the property is sold by the owner through another broker while the exclusive agreement is still in force, the broker in the original exclusive contract is entitled to his commission. *Gunning v. Muller,* 118 Wash. 685, 204 Pac. 779; *Robertson v. Wilson,* 121 Wash. 358, 209 Pac. 841.

For the reasons herein assigned, the judgment of the trial court is reversed and the cause remanded, with instructions to the trial court to enter judgment in favor of appellant and against respondent Frank M. Dever, individually, in the principal sum of sixteen hundred dollars.

While appellant prevailed in this court as regards respondent husband, he did not prevail as to respondent wife or the community, and we are therefore of the opinion that neither appellant nor respondents should receive costs in this court.

MALLERY, C. J., BEALS, STEINERT, and HILL, JJ., concur.